# FAMILY PROVISIONERS, INC., *Appellant,*
## *v.*
# COLUMBIA ACCEPTANCE CO., *Respondent.*

545 P2d 1379

*Warner E. Allen,* of McKee & Allen, Portland, argued the cause and filed the brief for appellant.

*John M. Berman,* Portland, argued the cause for respondent. With him on the brief were Herbert H. Anderson and Dezendorf, Spears, Lubersky & Campbell, Portland.

TONGUE, J.

**TONGUE, J.**

This is a suit for an accounting of a "reserve fund" belonging to plaintiff, but held by defendant as the result of a financing arrangement between the parties for purposes of recourse in the event of unpaid balances on conditional sales contracts assigned by plaintiff to defendant. The trial court, by its decree, determined the amount of the fund held by defendant, but refused to order payment of that amount to plaintiff, as demanded by it.[1]

In appealing from that decree plaintiff contends that any right that defendant may originally have had to hold the "reserve fund" for the purposes of recourse was lost by an impairment of the collateral which resulted from defendant's failure to continue a "course of dealing" established between the parties following the original financing arrangement between them.

In support of that contention plaintiff says that:

"It is established law that a course of dealing will establish a common understanding between parties *where there is no written expression of that understanding.*" (Citing and quoting from the Uniform Commercial Code, ORS 71.2050(1) and (3).)[2]

"The printed language of the assignments is completely silent as to the procedural aspects of the parties agreement for financing. There is nothing said about an established reserve fund, accounting to each other, percent amounts into the reserve fund, or the ninety day recourse procedure set up by the parties. In such a case the court must look to the way the parties conducted

---

[1] The trial court also denied defendant's counterclaim against plaintiff.

[2] ORS 71.2050(1) provides that:

"A *course of dealing* is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding *for interpreting their expressions* and other conduct." (Emphasis added)

Subsection (3) provides that:

"A *course of dealing* between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware *give* particular *meaning to and supplement or qualify terms of an agreement.*" (Emphasis added)

their business dealings over the two year period of their relationship to find the answers. * * *" (Emphasis added)

Upon examination of the record in this case, however, it is clear that there were not only individual written agreements upon the assignment of each conditional sales contract by plaintiff to defendant, but that there was a separate written "reserve agreement" between the parties which apparently provided for the respective rights of the parties on this subject.

The individual assignment agreements were produced at the time of trial, but the separate "reserve agreement" was not produced by plaintiff at that time. Plaintiff's president appeared to admit the existence of such an agreement, but said that he could not find it. Plaintiff did not serve upon defendant a notice to produce the agreement and although it appears that defendant's attorney had in his possession an unsigned copy of the agreement at the time of trial, plaintiff did not request or offer in evidence that copy of the agreement. Neither did plaintiff offer oral testimony of the terms of that written agreement. Instead, plaintiff relied entirely upon testimony of a "course of dealing" between the parties, apparently subsequent to the execution of that agreement.

■ By reason of the provisions of the Uniform Commercial Code upon which plaintiff relies, ORS 71.2050(1) and (3), it appears that evidence of such a "course of dealing" is admissible for the purposes of that statute only to "interpret" the terms of such an agreement or to "give * * * meaning to and supplement or qualify" terms of such an agreement. It follows that evidence of such a "course of dealing" can have no probative value when the parties have previously entered into a written agreement setting forth their respective rights and duties and when that agreement is not produced at the time of trial, nor any evidence of its terms.[3] For this reason it would serve no

[3]Cf. 1 Anderson, Uniform Commercial Code 177, § 1-205:8 (1970), and Columbia Nitrogen Corp. v. Royster Co., 451 F2d 3, 9 (4th Cir 1971).

useful purpose to discuss or summarize the testimony offered by plaintiff relating to the "course of dealing" relied upon by it.[4]

■ Plaintiff also contends, citing ORS 73.6060(1),[5] that "defendant's conduct since April, 1970, has terminated its rights to recourse any of the remaining contracts" in that defendant has "impaired the collateral" by allowing many of the outstanding contracts to go "through bankruptcy" without notice to plaintiff, turning all of the contracts over to "other methods of collection," losing some of the contracts, ignoring some of the accounts, and by erroneously issuing receipts showing some accounts to be paid in full. Again, without the introduction into evidence of the written "reserve agreement" between plaintiff and defendant it is impossible for this court to determine whether such conduct, even if proven, is either contrary to such agreement or "unjustifiable" within the meaning of ORS 73.6060(1).[6]

■ Plaintiff also contends that every contract subject to the Uniform Commercial Code "imposes an obligation of good faith in its performance or enforcement" citing ORS 71.2030. Again, in the absence of the terms

_____

[4]No contention is made by either party relating to the possible application of the parol evidence rule to the facts of this case.

[5]ORS 73.6060(1) provides that:

"The holder discharges any party to the instrument to the extent that without such party's consent the holder:

"(a) *Without express reservation of rights* releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

"(b) *Unjustifiably impairs any collateral* for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." (Emphasis added)

[6]In addition, the individual assignment agreements included provisions which confer upon defendant broad rights in dealing with contract debtors without notice to plaintiff.

[ 307 ]

of the contract it cannot be determined whether or not that obligation of good faith has been performed. In addition, no evidence was offered at the time of trial that defendant or its employees or agents did not exercise good faith.

On this state of the record we find that plaintiff has failed to prove such an impairment of collateral as to entitle him to demand payment at this time of any or all amounts held by defendant in the "reserve fund" which is the subject of this suit.

Finding no error, the decree of the trial court is affirmed.